IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:09-cv-0065 SD |
| | ) | |
| MINISTER KING SAMIR SHABAZZ aka MAURICE HEATH, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR DEFAULT JUDGMENT**

**I.     Introduction**

Plaintiff, United States of America, filed the Complaint in this action on January 7, 2009, alleging violations of Section 11(b) of the Voting Rights Act of 1965, 42 U.S.C. § 1973i(b) (2000). Section 11(b) prohibits intimidating, threatening, or coercing voters or those who aid voters. Section 11(b) also prohibits an attempt to do any of these.

Pursuant to Fed. R. Civ. P. 4, Defendant Minister King Samir Shabazz ("Shabazz") was personally and properly served with a copy of the Summons and Complaint. Copies of the accompanying Affidavits of Service were also timely filed with this Court. The Clerk of the Court entered a default judgment against Shabazz on April 2, 2009. Shabazz has not appeared. The United States now respectfully requests that this Court enter a default judgment against Shabazz in the form attached, enjoining future violations of Section 11(b) of the Voting Rights Act.

Simultaneously with this motion, the United States is submitting a notice of dismissal

pursuant to Rule 41(a)(1)(A)(i) with respect to Defendants Jerry Jackson, Malik Zulu Shabazz, and New Black Panther Party for Self-Defense.

## II. Allegations in the Complaint.

The Complaint, in pertinent part, alleges the following:

> 5. Defendant Minister King Samir Shabazz a.k.a Maurice Heath is a resident of Philadelphia, Pennsylvania. He is the leader of the Philadelphia chapter of the . . . New Blank Panther Party for Self-defense.
> * * *
> 8. On November 4, 2008, during the federal general election, the Defendant[] Samir Shabazz . . . deployed at the entrance of a polling location at 1221 Fairmont Street in the City of Philadelphia. The Defendant[] wore [a] military style uniform[] associated with the . . . New Black Panther Party for Self-Defense. [This] uniform included black beret[], combat boots, bloused dress pants, rank insignia . . . New Black Panther Party for Self-Defense insignia, and black jacket[].
>
> 9. During his deployment at the polls on November 4, 2008, at the entrance to the polling location at 1221 Fairmont Street, and in the presence of voters, Defendant Samir Shabazz brandished a deadly weapon. The weapon deployed was a nightstick, or baton. The baton included a contoured grip and wrist lanyard. Throughout the course of the deployment at the polling location, and while the polls were open for voting, Defendant Samir Shabazz pointed the weapon at individuals, menacingly tapped it [in] his oother hadn, or menacingly tapped it elsewhere. This activity occurred approximately eight to fifteen feet from the entrance to the polling location . . . .
>
> 10. Defendant[] Samir Shabazz . . . made statements containing racial threats and racial insults at both black and white individuals at 1221 Fairmount Street on November 4, 2008, wile the polls were open for voting.
>
> 11. At the polling place at 1221 Fairmount Street on November 4, 2008, Defendant[] Samir Shabazz . . . made menacing and intimidating gestures, statement and movements directed at individuals who were present to aid voters.

## III. A Default Judgment is Warranted.

A default judgment should issue against Shabazz. Default may be entered against a party that has "failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Fed. R. Civ. P. 55(b)(2)

provides that a district court may enter default judgment against a party when default has been previously entered by the Clerk of Court.

Even when a party has defaulted and all of the procedural requirements for a default judgment are satisfied, the decision to render default judgment rests in the sound discretion of the district court. See United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 194 (3d Cir. 1984); Hritz v. Woma Corp., 732 F.2d 1178, 1180 (3d Cir. 1984). Further, "[b]efore granting a default judgment, the court must first ascertain whether 'the unchallenged facts constitute a legitimate cause of action, since the party in default does not admit mere conclusions of law.'" Broad. Music, Inc. v. Spring Mount Area Bavarian Resort, Ltd., 555 F. Supp. 2d 537, 541 (E.D. Pa. 2008).

The legal test applied to granting a default judgment favors granting the United States' Motion. The Third Circuit has enumerated three factors that govern a district court's determination as to whether a default judgment is proper: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000) (citing $55,518.05 in U.S. Currency, 728 F.2d at 195). Application of this test amply demonstrates that a default judgment against Shabazz is now warranted here.

### 1. The United States will be prejudiced by a decision denying a default judgment.

The United States will be prejudiced if a default judgment is denied for two reasons. First, the United States has an interest in ensuring that voters attempting to exercise the franchise in Philadelphia are not subject to coercion, threats, or intimidation. The United States will be

- 3 -

prejudiced because in the absence of a default judgment and injunctive relief, Shabazz may commit further violations of Section 11(b) of the Voting Rights Act. Second, as more time passes between the events of November 4, 2008, and the resolution of the claims against Shabazz, witness recollections, an important component of this case, may fade with time. Accordingly, considerations of prejudice to the plaintiff weigh in favor of granting a default judgment for the United States at this time.

> **2. Shabazz failed to assert any defenses to the United States' claims and any anticipated defenses would be wholly without merit.**

The second factor in the Chamberlain analysis also favors granting a default judgment in favor of the United States for two reasons: First, Shabazz has presented no defenses, litigable or otherwise. Second, even assuming that Shabazz presented defenses in a responsive pleading or otherwise (and assuming as well the accuracy of the United States' speculations as to what these defenses might be), these defenses are without merit.

> **A. Shabazz has presented no defenses in this case.**

To meet their burden under Chamberlain of showing litigable defenses, defendants are not required "to prove beyond a shadow of a doubt that [they] will win at trial, but merely to show that [they have] a defense to the action which at least has merit on its face." Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 74 (3d Cir. 1987). In fact, the second factor is the "threshold issue in opening a default judgment." Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc., 175 F. App'x 519, 522 (3d Cir. 2006) (emphasis added). Thus, the second factor is primarily focused on what defenses are raised after a default judgment is challenged, and seemingly has little relevance at this stage of the proceedings because Shabazz has made no

appearance and has provided no indication of what defenses he might present. As Judge Rendell noted in her concurring opinion in Hill v. Williamsport Police Department, "it makes little sense for a plaintiff to be required to demonstrate that the defendant does not have meritorious defenses when the defendant has failed to respond." 69 F. App'x 49, 53 (3d Cir. 2003).

Precisely because Shabazz has not answered or otherwise appeared in this case, this Court is at present likely unable to determine whether he has any litigable defenses. Cf. Prismatic Dev. Corp. v. I.R.S, No.08-2818, 2008 WL 5377764, at *2 (D.N.J. Dec. 18, 2008) ("because [Defendant] has not answered or otherwise appeared, the Court is unable to determine whether [Defendant] has any litigable defenses"); Bd. of Trs. of the Constr. Indus. Pension Laborers' Dist. Council Fund v. ABC, No. 04-2295, 2004 U.S. Dist. LEXIS 22945, at *6-7 (E.D. Pa. Nov. 4, 2004) (finding that because the defendant failed to file a responsive pleading the court was not in a position to determine whether the defendant had a meritorious defense).

**B.      Shabazz's anticipated defenses have no merit.**

Assuming that Shabazz were to mount a First Amendment challenge to the United States' claim for injunctive relief, that challenge would fail. The United States' proposed order is carefully crafted to avoid such concerns. The proposed order, pertinent part, provides:

> Defendant Minster King Samir Shabazz is enjoined from displaying a weapon within 100 feet of any open polling location on any election day in Philadelphia, Pennsylvania, or from otherwise engaging in coercing, threatening, or intimidating behavior in violation of Section 11(b) of the Voting Rights Act, 42 U.S.C. § 1973i(b).

Shabazz's conduct can be restricted in the manner set out in the United States' proposed order as a viewpoint-neutral and content-neutral time, place, and manner restriction because the

order "burdens no more speech than necessary to serve a significant government interest."[1] Madsen v. Women's Health Ctr., 512 U.S. 753, 765 (1994) (upholding a 36-foot buffer zone as applied to the street, sidewalks, and driveways "as a way of ensuring access to the clinic" where throngs of protesters would congregate in close proximity to the clinic); see also Schenk v. Pro-Choice Network of W. N.Y., 519 U.S. 357, 380 (1997) (upholding 15-foot fixed buffer zones necessary to ensure access, but striking down floating buffer zones around people entering and leaving abortion clinics). Here, the significant governmental interests are many, including: ensuring the right of individuals to vote freely for the candidate of their choice without being threatened, intimidated, or coerced and, more generally, providing access to polling places and ensuring the public safety of polling sites. Cf. Mills v. Alabama, 384 U.S. 214, 218 (1966) (striking down a law which prohibited election day endorsements by newspapers and noting that the challenged statute "in no way involve[d] the extent of a State's power to regulate conduct in and around the polls in order to maintain peace, order and decorum there."); United States v. Dickens, 695 F.2d 765, 772 (3d Cir. 1982) ("[t]he First Amendment, which guarantees individuals freedom of conscience and prohibits governmental interference with religious beliefs, does not shield from government scrutiny practices which imperil public safety, peace or order.") The proposed injunction is appropriately tailored to this end with the goal of preventing coercing, threatening, or intimidating behavior at open polling locations during elections, closely tracking

---

[1] Shabazz was not engaged on election day in an activity deserving of First Amendment protections. Simply put, there is no First Amendment right to violate the law by engaging in voter intimidation in front of a polling place on election day. Similarly, it is permissible to punish "fighting words" because they amount to an assault rather than communication of ideas. See Chaplinsky v. New Hampshire, 315 U.S. 568, 572 (1942) (characterizing fighting words as "personal abuse").

the requirements of federal law under Section 11(b).

The proposed injunction prohibits Shabazz from appearing with a weapon within 100 feet of an open Philadelphia polling locations during election days. This restriction, unlike floating buffer zones around individuals struck down by the Supreme Court in Schenk, is fixed at open polling locations in Philadelphia during the conduct of elections only and would burden no more speech than necessary to ensure that federal law, under Section 11(b), is not violated.

A proposed injunction need not be the least restrictive or the least intrusive means of furthering the government's interests. See Ward v. Rock Against Racism, 491 U.S. 781, 798-99 (1989). The proposed injunctive relief here is circumscribed to promote the United States' interests. It has no application outside of Philadelphia, or on a day that is not an election day, or more than 100 feet from a polling place, or to conduct not involving a weapon, and so does not "burden substantially more speech than is necessary to further the government's legitimate interests." Id. at 799. Further, it does not improperly restrict expressive conduct as the United States has asserted interests wholly unrelated to the suppression of expressive conduct. Cf. Texas v. Johnson, 491 U.S. 397, 406 (1988) (stating that the "government generally has a freer hand in restricting expressive conduct that it has in restricting the written or spoken word.") Absent the proposed limitations, it is reasonably likely that Shabazz's activities would continue to include prohibited voter intimidation. Thus, the limited scope of the restrictions constitute a proper fit to remedy the violations alleged.[2] See United States v. Brown, 561 F.3d 420 (5th Cir.

---

[2] Indeed, the Supreme Court has upheld even content-based restrictions on electioneering in close proximity to the polls. See Burson v. Freeman, 504 U.S. 191, 193 (1992). The Burson Court held that, even where the establishment of a 100-foot zone in which no political campaigning could occur was not a content-neutral time, place, and manner restriction, Tennessee had a compelling interest in protecting the right of citizens to vote freely for

2009) (upholding injunction applying to election-day activities at polling locations).

### 3. Shabazz has exhibited dilatory behavior.

The third factor of the three-part Chamberlain test is demonstrated by Shabazz's unwillingness to respond to the United States' allegations despite numerous opportunities to do so. Culpable conduct in the Third Circuit is dilatory behavior that is willful or in bad faith. See Gross v. Stereo Component Sys., Inc., 700 F.2d 120, 124 (3d Cir. 1983). "Reckless disregard for repeated communications from plaintiffs and the court . . . can satisfy the culpable conduct standard." Hritz, 732 F.2d at 1183.

In this case, Shabazz has demonstrated willful dilatory behavior and reckless disregard of communications from the United States. He was properly served, by personal service. On March 10, 2009, the United States voluntarily sent a letter to Shabazz advising him of his impending default and encouraging him to seek counsel and have that counsel contact the United States to discuss the case. The United States also sent him a copy of the default entered against him. Despite these efforts, Shabazz has not appeared and defended in this case.[3]

This Court should therefore exercise its discretion to enter a default judgment against Defendant.

---

candidates of their choice, and a compelling interest in election integrity. Id. at 197-99. The campaign-free zone was narrowly tailored to achieve the compelling interest of preventing the harassment of voters. "This Court has recognized that the right to vote freely for the candidate of one's choice is of the essence of a democratic society." Burson, 504 at 199 (internal citation omitted). Thus, electioneering restrictions were upheld because they helped ensure the right to vote freely. The Court noted "[t]oday, all 50 States limit access to the areas in or around polling places . . . . In sum, an examination of the history of election regulation in this country reveals a persistent battle against two evils: voter intimidation and election fraud." Id. at 206.

[3] The United States also provided Shabazz with notice this Motion would be filed and with this Motion.

## IV. The Defendant's Conduct Violated Section 11(b) of the Voting Rights Act.

### 1. The unchallenged facts in this case constitute a violation of Section 11(b) of the Voting Rights Act.

Section 11(b) of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973i(b) states:

> No person, whether acting under color of law or otherwise, shall intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for voting or attempting to vote, or intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce, any person for urging or aiding any person to vote or attempt to vote, or intimidate, threaten, or coerce any person.

Section 11(b) does not require the plaintiff to prove a specific purpose to intimidate, threaten or coerce, which had been a bar to judgments in plaintiffs' favor in a number of pre-1965 cases. E.g., United States v. Edwards, 333 F.2d 575, 578-579 (5th Cir. 1964) (physical attack on individuals attempting to register to vote). In House hearings on Section 11(b) in 1965, Attorney General Nicholas Katzenbach testified that the most "serious inadequacy" of the predecessor statute, 42 U.S.C. § 1971(b), was "the practice of district courts to require the Government to carry a very onerous burden of proof of 'purpose.'" Hearings on H.R. 6400 Before Subcomm. No. 5 of the H. Comm. On the Judiciary, 89th Cong. 11 (1965) (Statement of Nicholas Katzenbach, Att'y Gen. of the United States). The Attorney General further stated that under the new Section 11(b) "defendants would be deemed to intend the natural consequences of their acts [which would represent] a deliberate and . . . constructive departure from the language and construction of the present law (42 U.S.C. § 1971(b))." Id. Thus, Section 11(b) shifted the evidentiary focus away from the perpetrator's state of mind to what the victims or potential victims might reasonably conclude. See Willingham v. County of Albany, 593 F. Supp. 2d 446, 462 (N.D.N.Y. 2006) ("unlike 42 U.S.C. § 1971(b) (which requires proof of a 'purpose' to

interfere with the right to vote), no subjective purpose or intent need be shown," citing H.R. Rep. No. 89-439 at 30 (1965), reprinted in 1965 U.S.C.C.A.N. 2462).

The few district court opinions pertaining to Section 11(b) have not provided much guidance as to what constitutes a violation.[4] It has been noted generally that Section 11(b) "is to be given an expansive meaning." Jackson v. Riddell, 476 F. Supp. 849, 859-60 (N.D. Miss. 1979); Whatley v. City of Vidalia, 399 F.2d 521, 525-26 (5th Cir. 1968) (Section 11(b) was intended to expand rights protected by § 1971(b)). "We assume that 'Congress expresses its intent through the ordinary meaning of its language' and therefore begin 'with an examination of the plain language of the statute.' If the language is unambiguous, our inquiry is at an end." Disabled in Action of Penn. v. Se. Penn. Trans Auth., 539 F.3d 199, 210 (3d Cir. 2008) (citations omitted).

In United States v. McLeod, 385 F.2d 734 (5th Cir. 1967), the court did appear to give the phrase "intimidate, threaten, or coerce" the ordinary meaning suggested by its plain words. While McLeod was an action brought under the 1957 Civil Rights Act, rather than Section 11(b),

---

[4] The extant cases perhaps provide better guidance as to what does not constitute threats, intimidation, or coercion under Section 11(b), though even in that regard there is little consistency in the case law. See United States v. Harvey, 250 F. Supp. 219, 231-7 (E.D. La. 1966) (firing black tenant-farmers because they had registered to vote, evicting them from rental homes, and discharging them from salaried jobs was not intimidation under Section 11(b), but was instead the termination of a business relationship); Gremillion v. Rinaudo, 325 F. Supp. 375, 376-78 (E.D. La. 1971) (dismissing claim of intimidation based on assistance from a uniformed officer, holding that the officer's presence, without more, did not establish a violation); Pincham v. Il. Judicial Inquiry Bd., 681 F. Supp. 1309, 1312-17 (N.D. Ill. 1988) (refusing to allow plaintiff to amend his complaint to include a claim under Section 11(b) alleging the defendants brought a retaliatory disciplinary action, finding in part an absence of intent); United States v. Brown, 494 F. Supp. 2d 440, 472 (S.D. Miss. 2007) (Section 11(b) was not violated by a public official who threatened to arrest voters, as the threat may have been based on a mistaken application of state law; nor by a published threat to challenge particular voters). In any event, none of these cases concerned the kind of behaviour at issue here.

both statutes use the same phrase, "intimidate, threaten, or coerce," pertaining to voting. Compare 42 U.S.C. § 1971(b) with 42 U.S.C. § 1973i(b).

In McLeod, the Fifth Circuit reversed the district court's dismissal of an action seeking to enjoin the mass arrest of African Americans seeking to vote or register to vote, as well as police surveillance of private associations active in registering voters. 385 F.2d at 739. The Fifth Circuit, examining whether the statutory standard of "coercion" was satisfied, said its "first task, then, is to determine whether the record required the district court to find that the arrests, prosecutions and other acts complained of had a coercive effect and were for the purpose of interfering with the right to register and to vote." Id. at 740. Noting that "[i]t is difficult to imagine anything short of physical violence which would have a more chilling effect on a voter registration drive than the pattern of baseless arrests and prosecutions revealed in this record," the Court found that the district court "clearly erred in failing to find that the defendants' acts threatened, intimidated, and coerced" prospective voters. Id. at 740-41; cf. NAACP v. Thompson, 357 F.2d 831, 838 (5th Cir. 1966) (characterizing "arrest[s] en masse on frivolous or unfounded charges" as intimidation).

Applying the plain language of the statute to the facts of this case, as well as the principal that defendants are "deemed to intend the natural consequences of their acts," it is amply clear that Shabazz's conduct on election day (1) was objectively the kind of conduct that would intimidate, threaten, or coerce voters and those assisting voters, and (2) was, a fortiori, an attempt to intimidate, threaten, or coerce voters and those assisting voters, in violation of Section 11(b) of the Voting Rights Act.

In addition to attempting to physically interfere with the rights of protected voters and the

brandishing or use of a weapon, Shabazz violated Section 11(b) because a reasonable person would find his actions to be objectively intimidating to voters or those aiding voters. Moreover, Shabazz shouted racial slurs in the presence of voters and assistors protected by Section 11(b).

### 2. Shabazz's conduct is not disputed in this case and can also be established by other witnesses.

The allegations in the Complaint are sufficient to warrant a default judgment against Shabazz. Furthermore, several eyewitnesses who observed Shabazz's conduct on election day at the polling place at 1221 Fairmount Street in Philadelphia can testify about a video recording of the event. Shabazz brandished a weapon, pointed it at individuals, tapped it in his hand in a menacing fashion while engaging people, and shouted racial slurs. Shabazz attempted to block physical access to the polls to one individual authorized to aid voters.

## V. Issuance of an injunction against Shabazz is warranted.

For injunctive relief obtained through a default judgment, a district court "must still consider the four factors governing issuance of" an injunction. <u>Broad. Music, Inc.</u>, 555 F. Supp. 2d at 543. These are: "(1) whether the moving party has shown actual success on the merits; (2) whether denial of injunctive relief will result in irreparable harm to [movant]; (3) whether granting of the [] injunction will result in even greater harm to the defendant; and (4) whether the injunction serves the public interest." <u>Id.</u>

First, as to the "actual success on the merits" factor, the default posture "prevents [a court] from reaching the merits of Plaintiffs' claims through an adversarial fact-finding process." <u>Broad. Music</u>, 555 F. Supp. 2d at 543.

Second, denial of an injunction that prohibits Shabazz from bringing a weapon within

100 feet of a Philadelphia polling location on election day would result in irreparable harm to the United States. Potential future statutory violations of the Voting Rights Act constitute irreparable harm to the United States. See, e.g., United States v. Berks County, 277 F. Supp. 2d 570, 578 (E.D. Pa. 2003) (violation of the Voting Rights Act constituted irreparable harm to plaintiff); United States v. Metro. Dade County, 815 F. Supp. 1475, 1478 (S.D. Fla. 1993) (granting temporary restraining order to stop violation of the Voting Rights Act); Dillard v. Crenshaw County, 640 F. Supp. 1347, 1363 (M.D. Ala. 1986) (granting preliminary injunction to stop violation of the Voting Rights Act); PROPA v. Kusper, 350 F. Supp. 606, 611 (D.C. Ill. 1973) (granting preliminary injunction to stop violation of Voting Rights Act). In addition to the statutory violation causing irreparable harm, voters in Philadelphia could face Shabazz again in future elections brandishing a weapon at the entrance to polling places. The United States, as well as the voting citizens, would be irreparably harmed if future violations of Section 11(b) by Shabazz are not enjoined.

Third, Shabazz will incur no unjustified harm if the requested injunction were to issue. There is no justification for Shabazz appearing at the entrance to a polling location in Philadelphia while brandishing a weapon. He cannot claim an injunction against continued violations of the Voting Rights Act constitutes a harm. See Brown, 561 F.3d at 436 (affirming injunction stripping election official of power to run elections when "defendants' own conduct has rendered the remedial order's terms necessary to right" violations of the Voting Rights Act). Further, as noted, any First Amendment defense would be without merit. Even on election days, Shabazz would remain free to engage in all manner of lawful, politically-motivated activities.

Fourth, an injunction against future violations of the Voting Rights Act serves the public

interest and thereby satisfies the fourth prong of Shields. In Berks County, this Court required the defendants to comply with the Voting Rights Act and provide equal access to the electoral process to Spanish speakers in Berks County. "Ordering Defendants to conduct elections in compliance with the Voting Rights Act so that all citizens may participate equally in the electoral process serves the public interest by reinforcing the core principles of our democracy." 277 F. Supp. 2d at 582. Similarly, ordering Shabazz to stop violating Section 11(b) by preventing him from intimidating voters or those aiding voters, or attempting to do so, serves the public interest in free elections. The right to vote without any measure of fear of physical attack is a highly treasured and unique characteristic of the American electoral process. An injunction that protects this valued heritage serves the public interest.

Thus, the United States has satisfied the four elements justifying injunctive relief.

## VI. Conclusion

For these reasons, Plaintiff requests that the Motion for Default Judgment be granted, and the proposed order be entered.

    Respectfully submitted,

    LORETTA KING
    Acting Assistant Attorney General

    CHRISTOPHER COATES
    Chief, Voting Section

    ROBERT D. POPPER
    Deputy Chief

    s/ Spencer R. Fisher
    J. CHRISTIAN ADAMS
    SPENCER R. FISHER
    Attorneys

United States Department of Justice
Civil Rights Division, Voting Section
950 Pennsylvania Avenue, N.W.
NWB - Room 7146
Washington, D.C. 20006
202-305-0015 phone
202-307-3961 fax
spencer.fisher@usdoj.gov

CERTIFICATE OF SERVICE

       I certify that, on May 15, 2009, a true and correct copy of the foregoing Memorandum of Law in Support of Motion For Default Judgment was placed in the United States mail, was placed in a properly-addressed envelope, with first-class postage duly paid and affixed to the envelope, and with the envelope addressed to the following non-CM/ECF participants:

1. Malik Zulu Shabazz
   Defendant
   Chairman, New Black Panther Party for Self-Defense, an unincorporated association
   4043 Clay Place, NE
   Washington, DC 20019

2. Jerry Jackson
   Defendant
   813 N. Parks St.
   Philadelphia, PA 19123

3. Minister King Samir Shabazz a/k/a Maurice Heath
   Defendant
   1522 S. 20th Street
   Philadelphia, PA 19146

4. Michael Coard, Esq.
   1 Liberty Place
   1650 Market Street
   Suite 3652
   Philadelphia, PA 19107

       This Certificate was executed on May 15, 2009 at Washington, DC.

                                              s/ Spencer R. Fisher
                                              SPENCER R. FISHER
                                              Trial Attorney
                                              United States Department of Justice
                                              Civil Rights Division, Voting Section
                                              950 Pennsylvania Avenue, N.W.
                                              NWB - Room 7146
                                              Washington, D.C. 20006
                                              202-305-0015 phone
                                              202-307-3961 fax
                                              spencer.fisher@usdoj.gov